OPINION OF THE COURT
Joseph S. Mattina, S.
This matter has come before the court in a most unusual *797 manner and presents a question as to whether Donald Prime, a son of the decedent, has standing to file objections to a purported last will and testament dated April 9, 1997.
To put the question in perspective, it is first necessary to review the historical events which led us to this point in time.
For some time prior to August 1, 1984, Carmen Prime, Sr., and Donald Prime were in partnership in a business known as Prime Food Service Equipment Company located at 100 Rhode Island Street, Buffalo, New York. On or about August 1, 1984, the parties executed an agreement purported to be a bill of sale conveying the interest of Carmen Prime, Sr., to Donald Prime for the stated sum of “One and no more Dollars.” As part of the consideration, the following paragraph is embodied in the agreement: “That the Party of the Second Part agrees, as part ot [sic] the consideration herein, to renounce any share in any future Estate of the Party of the First Part after his decease and of any share in the Estate of Phyllis Prime, mother of the Party of the Second Part.” At the time of the signing of this agreement Phyllis Prime was already deceased, she having died on August 23, 1980, and her will had already been admitted to probate.
On January 25, 1990 Carmen Prime, Sr., executed a document purported to be his will, leaving Donald Prime a bequest of $5,000. It is alleged that on May 20, 1991 Carmen Prime, Sr., executed a document purported to be his will, leaving Donald Prime a bequest of one half of his residuary estate, but neither the original nor a copy of this will has been filed with the court.
On October 11, 1991 Donald Prime executed a release in the Phyllis Prime estate which contained the usual language releasing Grace McGroder as executor of the estate plus the following language: “And I agree that I have no further interest in said estate, but [st'c] nothing herein shall relate to the Estate of my father, Carmen Prime.”
On March 27, 1998 Legal Services for the Elderly, Disabled and Disadvantaged of WNY, Inc., was appointed temporary guardian of the person and property of Carmen Prime, Sr., by order of the New York Supreme Court based on a petition of Donald Prime filed on February 11, 1998.
On July 8, 1998 Carmen Prime died, and on August 3, 1998 Jeanette Fanara, the named executrix in the April 9, 1997 will, was appointed voluntary administrator under SCPA article 13.
*798 On March 26, 1999 Donald Prime filed a petition asking the court to deny probate of the April 9, 1997 will.
On April 28, 1999 Jeanette Fanara filed a petition asking that the will be admitted to probate and that she be appointed executrix. Concurrently, Jeanette Fanara and Grace McGroder filed a notice of motion to dismiss the petition of Donald Prime on the basis that he lacks standing to object to the probate of the will based on the language of the August 1, 1984 bill of sale agreement, and there are no issues of fact which prevent the granting of summary judgment.
Although there have been minor skirmishes along the way, the only matters presently before the court are whether Donald Prime has standing to file objections and whether the court should grant summary judgment and dismiss his petition.
Counsel for Jeanette Fanara and Grace McGroder argues that Donald Prime contracted away any right he may have had to file objections in his father’s estate by executing the August 1, 1984 agreement, and therefore lacks standing to appear in this proceeding. In support of this position, the Court of Appeals case Matter of Cook (244 NY 63, 68 [1926]) is cited as being a similar case in which the Court held that the person who executed an agreement to prospectively release all of his rights to a future estate becomes “a stranger to the estate.” While the concept of the decision in this case would seem to have application to the matter before the court, the language of the two agreements is quite different. In the Cook agreement, the wording was: “ ‘in consideration of this gift I agree that I will not at any time contest, or join with others in contesting, her will’ ” (Emphasis added.) In the agreement in question, the consideration is: “to renounce any share in any future Estate of the Party of the First Part after his decease.” (Emphasis added.) While the term “renounce” does have a special legalistic meaning in reference to estates, the court feels that the use of that term by two laypersons in an agreement they drafted should not be given any meaning other than the ordinary layperson meaning of making an affirmative declaration of abandonment.
Counsel for the objectant, Donald Prime, argues that the execution of the 1990 and 1991 wills by Carmen Prime, Sr., in which he leaves certain portions of his estate to Donald Prime, constitutes a unilateral rescission or waiver of that portion of the 1984 agreement whereby Donald Prime agrees to “renounce” any share in his father’s estate.
If there had been no wills executed by Carmen Prime, Sr., subsequent to the execution of the 1984 agreement, it is clear *799 that the factual situation would be quite similar to Matter of Cook (supra), and the court would be inclined to follow the holding as stated (at 68): “None is authorized to contest the probate of a will except those interested in the estate, the heirs and next of kin. Even an heir or a next of kin may become as a stranger to the estate by having assigned all his interest therein, or having released all his rights or prospective interests, to the person making the will. At common law, a mere possibility could not be assigned. Equity, however, recognized the force of such agreements or releases, and when fairly made for an adequate consideration, gave them effect and validity.”
However, the facts are not similar and the parties to the 1984 agreement remained free to modify its terms, to rescind it, or to waive the performance of any part of it.
The law does not require that a new written agreement be executed, but the acts of the parties either jointly or unilaterally can vary or change the terms of a contract or waive certain provisions.
The Appellate Division, Second Department, stated in General Elec. Capital Commercial Automotive Fin. v Spartan Motors (246 AD2d 41) the following: “In any event, it is well established that a written contract may be modified by the parties’ postagreement ‘course of performance’ (UCC 2-208 [1], [3]; see, e.g., Farmers State Bank v Farmland Foods, 225 Neb 1, 402 NW2d 277; see also, Rose v Spa Realty Assocs., 42 NY2d 338, 343-344; Maynard Ct. Owners Corp. v Rentoulis, 235 AD2d 867; Indemnity Ins. Co. v Levine, 168 AD2d 323, 326; Recon Car Corp. v Chrysler Corp., 130 AD2d 725, 729).”
Justice McCullen of the City Court of New York, in Brandt v General Diaries (40 NYS2d 692, 696-697), clearly stated: “ ‘It is fundamental that either party to a contract is at liberty to waive any of its provisions which are made for his benefit.’ Knight v. Kitchin, 237 App.Div. 506, 512, 261 N.Y.S. 809, 816, see, also, Perlman v. East Annadale Beach Corporation, 233 App.Div. 599, 601, 253 N.Y.S. 775. ‘Those who make a contract, may unmake it. * * * Whenever two men contract, no limitation self-imposed can destroy their power to contract again.’ Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 387, 388, 122 N.E. 378, 381. The waiver or modification need not be in writing, nor is it necessary that the modification be made in precise terms. ‘An existing contract may be modified later by subsequent agreement, oral or written. * * * That the original agreement has been so modified may be proved by circumstan *800 tial evidence — by showing the conduct of the parties.’ Martin v. Peyton, 246 N.Y. 213, 218, 158 N.E. 77, 78.”
It would appear that by naming Donald Prime in the 1990 and 1991 wills to receive part of his estate, Carmen Prime, Sr., unilaterally waived the requirement that Donald Prime renounce his share of the estate.
An analogy can be made to a situation where a wife is named in her husband’s will as beneficiary, and the parties later divorce. She is treated as if she predeceased her husband and does not take under the will (EPTL 5-1.4). However, if after the divorce the husband executes a new will naming the former spouse as a beneficiary, she does take and that provision of the EPTL does not apply.
It would seem incongruous to allow the naming of a former spouse to inherit in such a circumstance and not to allow a father to waive the performance of a portion of a sale agreement by his son by a similar act of naming him in a subsequently executed will.
It is, therefore, the court’s decision based on the foregoing that Donald Prime is deemed to have standing to object to the probate of the April 9, 1997 will by virtue of his having been named as a beneficiary in the 1990 and 1991 wills.
That portion of the motion to dismiss on the basis that Donald Prime lacks the capacity to bring his petition before the court is therefore denied, and Donald Prime is entitled to request an examination of the witnesses to the April 9, 1997 will under SCPA 1404.
That portion of the motion to dismiss on the basis of failing to state a cause of action is premature inasmuch as Donald Prime has not procedurally as yet filed objections to the petition for probate filed by Jeanette Fanara, even though he stated the usual three grounds, for filing of objections, of lack of due execution, lack of testamentary capacity, and fraud or undue influence in his petition, to deny probate of the April 9, 1997 will and to revoke letters of voluntary administration to Jeanette Fanara. Therefore, that portion of the motion is denied, without prejudice.