CATHY DANIELS, LTD., et al., Appellants, v ROBIN S. WEINGAST et al., Respondents, et al., Defendant. [936 NYS2d 44]—

Plaintiff Cathy Daniels, Ltd. is a women's clothing business owned and managed by plaintiffs Herbert L. Chestler, Daniel Chestler, and Steven M. Chestler. Defendants Robin S. Weingast and Robin S. Weingast & Associates, Inc. (the Weingast defendants) are insurance agents authorized to sell insurance for defendant John Hancock Life Insurance Company of New York. At some point before June 15, 2005, plaintiffs engaged the Weingast defendants as their insurance advisors and consultants.

According to the complaint, the Weingast defendants told plaintiffs that an Internal Revenue Code § 419 (e) Single Employer Trust Employee Welfare Benefits Plan (BETA plan) would enable them to purchase life insurance where the premiums would be fully tax deductible. Plaintiffs, in alleged reliance upon the Weingast defendants' representations, purchased BETA plan life insurance policies from John Hancock.

On June 15, 2005, each of the individual plaintiffs signed a one-page acknowledgment and disclosure form; individual defendant Weingast signed the forms on behalf of John Hancock. Each form states: "John Hancock has not made a determination that this plan achieves any specific tax or other objectives . . . [I]t is important that you speak with your independent tax/legal advisors before you complete the purchase of the policy and go forward with your plan. (An Independent tax/legal advisor is one that is not provided, recommended, chosen or paid for by your John Hancock representative.) . . . John Hancock has not authorized its representatives to provide you with tax or legal advice, and you may not rely on any such advice provided by your John Hancock representative . . . By signing this form you are stating that you understand this information, and that you have obtained from your independent advisors whatever advice you deem necessary or appropriate concerning your plan's risks and benefits."

On September 15, 2005, the corporate plaintiff, Cathy Daniels, Ltd., signed a BETA Individual Employer Welfare Benefit Plan Waiver and Representation Agreement wherein it acknowledged and agreed that claims of deductibility may be subject to challenge by the Internal Revenue Service, that the BETA plan has not been ruled on by the IRS, and that any tax deductions taken

in connection with participation in the Plan may be subject to challenge or disallowance. Several other forms signed that day included similar acknowledgments.

In October 2007, the IRS published a revenue ruling which, according to the complaint, effectively disallowed deductions for payment of premiums under the BETA plan. The IRS subsequently audited plaintiffs and disallowed all prior deductions made for payment of insurance premiums under the BETA plan. As a result, the individual plaintiffs became subject to federal and state tax adjustments on their personal tax returns. Plaintiffs allege that without the tax deductions, they were unable to afford the policies and were forced to sell them at a substantial loss.

The cause of action for breach of fiduciary duty was properly dismissed. In the absence of a special relationship, a claim against an insurance agent or broker for breach of fiduciary duty does not lie (*Bruckmann, Rosser, Sherrill & Co., L.P. v Marsh USA, Inc.*, 65 AD3d 865, 867 [2009]; *People v Liberty Mut. Ins. Co.*, 52 AD3d 378, 380 [2008]; *see Murphy v Kuhn*, 90 NY2d 266, 270 [1997]). Here, the allegations in the complaint establish that the parties had nothing more than a typical insurance agent-customer relationship. Even if a fiduciary relationship existed, the extensive disclaimers signed by plaintiffs make clear that defendants had no duty to provide tax advice concerning the BETA plan. For the same reason, the negligence claims were properly dismissed. In light of this disposition, we need not determine whether the negligence and breach of fiduciary duty claims are barred by the statute of limitations.

The disclaimer forms are also fatal to plaintiffs' fraud cause of action. To sustain a claim for fraud, a plaintiff must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). The disclaimers here show that plaintiffs expressly acknowledged that defendants were not authorized to provide tax advice, and they would not rely on any such advice provided. Thus, the documentary evidence flatly contradicts plaintiffs' claim that they justifiably relied on any tax information provided by defendants (*see KSW Mech. Servs., Inc. v Willis of N.Y., Inc.*, 63 AD3d 411, 412 [2009]).

In the breach of contract cause of action, plaintiffs allege that on November 13, 2006, several of the individual plaintiffs met with individual defendant Weingast. At that meeting, Weingast purportedly made an oral promise that she, her company and John Hancock would indemnify and reimburse plaintiffs if they

suffered any losses as a result of disallowance of the tax deductions.

The motion court improperly concluded that the contract claim was barred by the statute of frauds. An oral agreement will not be enforceable when the agreement "[b]y its terms is not to be performed within one year from the making thereof" (General Obligations Law § 5-701 [a] [1]). The Court of Appeals has interpreted this provision "to encompass only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year. As long as the agreement may be fairly and reasonably interpreted such that it may be performed within a year, the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame" (*Cron v Hargro Fabrics*, 91 NY2d 362, 366 [1998] [internal quotation marks and citations omitted]).

Here, Weingast's alleged promise to indemnify plaintiffs was capable of full performance within a year and thus did not violate the statute of frauds (*see Financial Structures Ltd. v UBS AG*, 77 AD3d 417, 418 [2010]). Defendants argue that the contract could not have been performed within a year because the IRS did not issue its disallowance ruling or complete its audit until more than a year after the agreement was made. However, the question is not what the actual performance of the contract was, but whether the contract required that it should not be performed within a year (*Foster v Kovner*, 44 AD3d 23, 26 [2007]). Defendants have not shown that there was "absolutely no possibility in fact and law" that the IRS could have issued its ruling and completed an audit within a year's time (*Cron*, 91 NY2d at 366).

Defendants argue that the contract claim is barred by the parol evidence rule and certain merger clauses contained in the documents underlying the transaction. However, the alleged oral promise was made more than a year after plaintiffs entered into the transactions. Neither the parol evidence rule nor the merger clauses preclude a breach of contract claim based on a subsequent additional agreement (*see Getty Ref. & Mktg. v Linden Maintenance Corp.*, 168 AD2d 480 [1990]; *Local 50, Bakery, Confectionery & Tobacco Workers Union, AFL-CIO v American Bakeries Co.*, 73 AD2d 862 [1980]).

Nor is the contract claim foreclosed by a waiver of liability clause contained in one of the transaction documents. In that document, the corporate plaintiff agreed to hold harmless and waive liability against defendant Designs for Finance, Inc., its employees, agents, officers, directors or other persons it controls

or is controlled by. In the absence of evidence of the relationship between Designs for Finance, Inc. and the other defendants, it cannot be said that this document conclusively establishes a waiver of plaintiffs' contract claim.

Although plaintiffs have sufficiently pleaded a breach of contract claim against the Weingast defendants, the claim was properly dismissed as against John Hancock. The complaint fails to sufficiently allege that individual defendant Weingast had actual or apparent authority to bind John Hancock to an agreement to indemnify the losses, particularly in light of a provision in the policies to the contrary.

The motion court's dismissal of the General Business Law § 349 cause of action was proper. The complaint contains insufficient allegations of a broad impact on consumers at large (*see Bhandari v Ismael Leyva Architects, P.C.*, 84 AD3d 607, 608 [2011]). Concur—Tom, J.P., Andrias, Acosta, Freedman and Richter, JJ.